IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   CRIMINAL NO. TDC-23-0381 |
| | * |
| SAMUEL SWEELEY, | * |
| | * |
| Defendant. | * |
| | * |

*******

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The Government submits this memorandum in anticipation of the sentencing of the defendant, Samuel Sweeley (the "Defendant"). The Court has scheduled sentencing for Tuesday, July 23, 2024 at 9:30 a.m.[1] The Government respectfully requests that the Court sentence the Defendant to 37 months **of incarceration, to be followed by a term of supervised release of three years**. The Government does not seek restitution, but does ask the Court to impose the mandatory $100 special assessment fee. The Government believes that this sentence is sufficient, but not greater than necessary, to achieve the sentencing goals set forth in 18 U.S.C. § 3553.

**I.      Summary of Facts**

On September 4, 2022, at approximately 2:38 a.m., the Defendant was driving his Lexus SUV northbound on the Baltimore-Washington Parkway ("BW Parkway") approaching the exit ramp to the inner loop of I-495/I-95, in Maryland. The BW Parkway adds a third lane of northbound travel prior to the I-495/I-95 exchange, with two lanes of travel northbound and one exit lane for the exit ramp to I-495/I-95. The Defendant moved to the exit lane but failed to exit and continued to travel northbound on the BW Parkway, entering the shoulder area. Approximately

---

[1] The Government anticipates that Victim 2 and family and friends of Victim 1 may allocute at the sentencing hearing.

ten to fifteen feet beyond the exit ramp, the Defendant drove his vehicle into the rear of an occupied Hyundai Elantra sedan, which had been parked on the shoulder with its hazards on. Witnesses promptly called for emergency assistance.

Prince George's County Fire and Emergency Medical Services responded to the call, with United States Park Police ("USPP") arriving shortly thereafter at approximately 2:58 a.m. Prince George's County Fire and Emergency Medical Services advised USPP that the male driver, Victim 1, of the Hyundai was deceased and that the female passenger, Victim 2, was transported to the hospital. The Defendant, the only occupant of the Lexus, was still on the scene.

The Defendant did not appear injured and consented to a blood draw. A USPP officer transported the Defendant to the hospital for a blood draw, but the Defendant subsequently declined to allow one to occur. While at the hospital and speaking with the Defendant, law enforcement noticed that there was an odor of an alcohol emanating from his person and breath. Law enforcement also observed that the Defendant had red, watery, bloodshot eyes and was slurring his speech.

A USPP officer then administered filed sobriety tests, including: 1) horizontal gaze nystagmus; 2) walk and turn; and 3) one leg stand. As a result of the tests, law enforcement determined that the Defendant was under the influence of alcohol.

At 5:26 a.m., law enforcement obtained a warrant for a blood draw. The warrant was approved at 5:33 a.m. the Defendant was advised of the existence of the warrant and refused to comply with having his blood drawn. The first request for his blood was made at 5:36 a.m. Subsequent requests were made at 5:51 a.m. and 6:23 a.m. At 6:48 a.m., the Defendant's blood was drawn and was found positive for the presence of alcohol at a level of .15 grams of alcohol per 100 milliliters of blood.

USPP investigated the circumstances of the collision and determined that the primary causes of the fatal crash were that the Defendant improperly utilized a parallel deceleration lane, was traveling 80 miles per hour in a zone with a posted speed limit of 55 miles per hour, and was under the influence of alcohol at the time of the crash.

An autopsy conducted by the Maryland Office of the Chief Medical Examiner determined that Victim 1's cause of death was a result of multiple injuries suffered on the crash caused by the Defendant.

### II.     Procedural Background

On October 27, 2023, the Defendant was charged by indictment with involuntary manslaughter, in violation of 18 U.S.C. § 1112(b) (Count One); driving under the influence of alcohol, in violation of 36 C.F.R. § 4.23 (Count Two); reckless driving, in violation of 36 C.F.R. § 4.2, incorporating Maryland Transportation Article ("MTA") § 21-901.1(a) (Count Three); and speeding, in violation of 36 C.F.R. § 4.21(c). The Defendant had an initial appearance and arraignment on November 1, 2023.  ECF No. 5.  A rearraignment was held on February 29, 2023, and the Defendant pled guilty to Count One and Count Two of the Indictment.  ECF Nos. 30, 31.

### III.    Advisory Sentencing Guidelines
**Count One: Involuntary Manslaughter**

The Government agrees with the Presentence Report that the Defendant's adjusted total offense level is 19 and his criminal history category is I, resulting in an advisory guidelines range of 30 to 37 Months.

*Total Offense Level*:  The base offense level for a violation of 18 U.S.C. § 1112(b) involving the reckless operation of a means of transportation is 22 pursuant to U.S.S.G. § 2A1.4(a)(2)(B).  PSR ¶ 21.

The Government agrees to a two-level reduction pursuant to U.S.S.G. § 3E1.1(a) for the Defendant's acceptance of responsibility.

The Government will also move for a one-level reduction pursuant to U.S.S.G. § 3E1.1(b) because the Defendant made a timely notification of his intention to enter a plea of guilty.

Thus, the Defendant's total adjusted offense level is 19.  PSR ¶ 30.

***Criminal History Category***:  The Government agrees with the Presentence Report that the Defendant's criminal history category is I.  PSR ¶ 34.

***Guidelines Range***:  The Government agrees with the Presentence Report that with an adjusted offense level of 19 and a criminal history category of I, the advisory Guidelines range is 30-37 months of imprisonment.  PSR ¶ 57.

**Count Two: Driving Under the Influence of Alcohol**

Driving under the influence of alcohol, in violation of 36 C.F.R. § 4.23 is a Class B misdemeanor – therefore the sentencing guidelines do not apply. The Government agrees with the Presentence Report that the maximum term of imprisonment available for Count Two is six months of imprisonment.

**IV.     Statutory Sentencing Factors**

A district court must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range."  *Gall v. United States*, 552 U.S. 38, 49 (2007) (citing *Rita v. U.S.*, 551 U.S. 338 (2007)).  After calculating the range, it must consider the § 3553(a) factors before imposing the sentence.  *Id*. at 49-50.

The statutory factors for the Court's consideration under 18 U.S.C. § 3553(a) include: (1) the nature and circumstances of the offense and history and characteristics of the defendant and (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public and provide the defendant

with needed services.  "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4; *see also* 18 U.S.C. § 3661.  "If the district court decides to impose a sentence outside the guidelines range, it must ensure that its justification supports the degree of the variance." *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008) (quoting *Gall*, 552 U.S. at 51).  The district court is given "some latitude," and "a degree of deference," to tailor a particular sentence to the circumstances. *United States v. Green*, 436 F.3d 449, 456-57 (4th Cir. 2006); *United States v. Moreland*, 437 F.3d 424, 433 (4th Cir. 2006).

*\*\*\**

The Government submits that a sentence of 37 months imprisonment—which is at the top of the applicable Guidelines range—is sufficient, but not greater than necessary, to achieve the sentencing goals set forth in 18 U.S.C. § 3553.  The Court should impose this sentence because the nature and circumstances of the offense are serious, and this is the second offense in which the Defendant has operated a motor vehicle while under the influence of alcohol – this time resulting in the death of Victim 1 and serious injury of Victim 2.

### A.  Nature and Circumstances of the Offense

The Defendant committed a serious criminal offense: he killed an innocent person.  The Defendant drank more than the legal limit, drove his car recklessly and at very high rate of speed, illegally continued driving his vehicle into a place of safety, and, as a result, he took another person's life and seriously injured another.  As detailed in the victim impact statement submitted by Victim 2 and Victim 1's wife and brother, this crash has affected them deeply. *See* Exhibits One through Three, Victim Impact Statements.

Courts have suggested that the Guidelines—which put the base offense level at 22—do not adequately capture the seriousness of involuntary manslaughter. *See, e.g., United States v. Lente*, 759 F.3d 1149, 1159 (10th Cir. 2014) (affirming upward variance, in part, because "the history of the involuntary manslaughter Guidelines indicates that the Commission, its working groups, and others have repeatedly expressed concern that the sentencing ranges for involuntary manslaughter generally . . . are too low"); *United States v. Baker*, 2022 WL 4235324, at *3 (D.N.M. Sept. 14, 2022) (observing that "the Guideline sentence for aggravated assault resulting in serious bodily injury is higher than that for involuntary manslaughter involving reckless conduct").

Other defendants have been sentenced to lengthy jail sentences in this District for similar conduct. *See, e.g., United States v. Tervell Ham*, 8:20-cr-258-TDC (42-month sentence after pleading guilty); *United States v. Stephonze Blakeney*, 8:17-cr-00559-PX (36-month sentence after conviction at trial for homicide by motor vehicle, which carries a maximum sentence of 4 years' incarceration); *United States v. Charles Wiggins*, 8:14-cr-00488-GJH (54-month sentence after conviction at trial); *United States v. Kristen Smith*, 8:10-cr-00069-RWT (51-month sentence after conviction at trial); *but see United States v. Brian English*, 8:22-cr-241-TDC (18-month sentence after pleading guilty).

### B. History and Characteristics of the Defendant

The Defendant has prior criminal history directly relevant to the conduct at issue here. The Defendant was previously convicted of Driving Under the Influence of Alcohol in this court in 2014 after being arrested for traveling at a rate of speed exceeding one-hundred miles per hour and having a blood alcohol content of .089 – significantly above the posted speed limit while also over the legal limit to operate a vehicle. PSR ¶ 33. The Defendant was sentenced to four days of incarceration and twelve months of probation. PSR ¶ 33.

The government acknowledges that the Defendant has earned several degrees, that he serves as an educator in Baltimore City Public Schools, and that he has maintained stable employment. Since his arrest the Government also acknowledges that the Defendant has attended substance abuse classes. PSR ¶ 50, 51, 52.

### C. Deterrence

The serious nature of the Defendant's conduct coupled with his prior conviction for the same or similar crime which here led to the death of an innocent person presents the need for a sentence to provide specific deterrence for this Defendant. Moreover, the Defendant's prior sentence did not provide the needed deterrence to prevent the death of Victim 1.

As to general deterrence, imposing a sentence at top of the Guidelines will signal to the general public that involuntary manslaughter is a serious crime and will result in a multi-year prison sentence.

### D. Supervised Release

The statutory maximum term of supervised release is three years. *See* 18 U.S.C. § 3583(b)(2).  The Guidelines range for a term of supervised release is one to three years. U.S.S.G. § 5D1.2(a)(2). The Government respectfully requests a term of supervised release of three years with conditions including abstinence from alcohol, alcohol treatment and testing, attendance of a Mothers Against Drunk Driving victim impact panel meeting, ignition interlock on any vehicle driven during the first twelve months of supervison, and an alcohol restriction on the Defendant's license.  The Government submits that three years of supervised release with the recommended conditions will help to ensure that the Defendant does not abuse alcohol in the future.

## **CONCLUSION**

For the foregoing reasons, and any additional information that may be presented at the sentencing hearing, the Government respectfully requests that the Court impose a term of imprisonment of **37 months of incarceration to be followed by a term of supervised release of three years.**

                                                  Respectfully Submitted,

                                                  Erek L. Barron
                                                  United States Attorney

                    By:                 /s/
                                                  Shabnam Aryana
                                                  Joel Crespo
                                                  Assistant United States Attorneys

.